UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JARED KING,

                Plaintiff,

  -against-                                    1:14-CV-0165 (LEK/TWD)

KAREN CREED, *et al.*,

                Defendants.

## **MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

*Pro se* Plaintiff Jared King ("Plaintiff") commenced this action alleging various civil rights violations arising from the suspension of his driver's license. Dkt. Nos. 1; 6 ("Amended Complaint"). Presently before the Court are a pair of Motions to dismiss for failure to state a claim by Defendants Town of Bethlehem Clerk to the Justice Karen Creed ("Creed"), Officer Craig Sleurs ("Sleurs"), the Town of Bethlehem, and Town of Bethlehem Justice Ryan Donovan ("Judge Donovan") (together, the "Town Defendants"); and Barbara Fiala ("Fiala") and Albany County Judge Thomas Breslin ("Judge Breslin")[1] (together, the "State Defendants") (collectively, "Defendants"). Dkt. Nos. 25 ("Town Motion"); 25-3 ("Town Memorandum"); 36 ("State Motion"); 36-1 ("State Memorandum"). For the following reasons, the Town Motion is granted in part and denied in part, and the State Motion is granted.

---

[1] The Amended Complaint indicates that Judge Breslin is now a New York Supreme Court Judge. Am. Compl. ¶ 17 n.1

## II. BACKGROUND[2]

### A. Driver's License Suspension and Arrest

In September 2008, Plaintiff received a speeding ticket from the Town of Bethlehem Police Department asserting a single violation of New York Vehicle and Traffic Law § 1180(d). Am. Compl. ¶ 4. Within two business days, Plaintiff answered the summons in person and entered a plea of not guilty. Id. ¶ 5. In April 2009, Plaintiff received a notice from the New York Department of Motor Vehicles ("DMV") stating that his license would be suspended on May 9, 2009, for "failure to answer summons." Id. ¶ 6. Judge Donovan subsequently advised Plaintiff that his mail-in plea could not be processed and that Plaintiff needed to contact the court within ten days to avoid suspension of his license. Id. ¶ 7. Plaintiff then appeared in person at the court clerk's office, where he was informed that he must complete a new plea because the clerk's office could not find the previous one. Id. ¶ 8.

Over the next six months, Judge Donovan compelled Plaintiff's attendance at several court dates. Id. ¶ 9. During this period, Plaintiff filed a motion to dismiss, which was denied by Judge Donovan. Id. ¶¶ 10-11. Plaintiff filed a second motion to dismiss with a request that the court correct "misrepresent[ed] facts on the record." Id. ¶¶ 11, 13. Judge Donovan denied this second motion orally before trial and subsequently in writing in March 2010. Id. ¶ 13. Plaintiff was convicted of the speeding charge by Judge Donovan in October 2009. Id. ¶¶ 12-14. Plaintiff filed a

---

[2] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

motion to vacate the conviction, which Judge Donovan denied. Id. ¶ 15. Plaintiff appealed the conviction. Id. ¶ 16. Judge Breslin denied Plaintiff's appeal for failure to properly serve the opposition. Id. ¶ 17.

Plaintiff received a letter signed by Creed and dated November 8, 2010, detailing the fine Plaintiff owed. Id. ¶ 18. Sometime in 2011, Plaintiff received another letter from Creed stating that his driver's license was suspended. Id. Plaintiff had not received a notice of suspension from the DMV. Id.

Sometime in March or April 2012, Plaintiff received a notice of driver's license suspension from the DMV for failure to answer the summons. Id. ¶ 19. Plaintiff responded to this notice by "re-notic[ing]" his application for a stay pending appeal in Albany County Court, and by bringing his case files to the DMV. Id. Plaintiff left his documents with the DMV, and an attorney for the DMV said she would look over his paperwork. Id. Plaintiff assumed that, because he had in fact answered the summons for the 2008 speeding ticket, the DMV would not go through with the proposed suspension. Id.

On September 25, 2013, Plaintiff was issued two tickets for operating a motor vehicle without a license and aggravated unlicensed operation of a motor vehicle in the third degree. Id. ¶ 22. The ticketing officer, Sleurs, confiscated Plaintiff's driver's license. Id. ¶ 23.

On November 26, 2013, Sleurs arrested Plaintiff for driving without a license and aggravated driving without a license. Id. ¶ 24. Sleurs showed Plaintiff that his police computer indicated that Plaintiff's license was suspended, "now for the correct reason, 'failure to pay fine.'" Id. Following the arrest, Sleurs impounded Plaintiff's vehicle. Id.

Plaintiff later received a notice signed by Fiala, the DMV Commissioner, and dated November 18, 2013, indicating that Plaintiff's driver's license would be suspended indefinitely if he did not pay a Driver Responsibility Assessment ("Assessment") pursuant to New York Vehicle and Traffic Law §§ 503(4) and 1199.  Id. ¶ 33.

**B. Procedural History and Summary of Allegations**

Plaintiff commenced this action on February 18, 2014, asserting various civil rights claims against Defendants pursuant to 42 U.S.C. § 1983, and seeking monetary, injunctive, and declaratory relief.  Dkt. No. 1.  Plaintiff also previously moved for a preliminary injunction ordering Fiala to reinstate his driver's license pending the outcome of this action, which was denied in the Court's Order dated September 18, 2014.  Dkt. Nos. 7; 45.

Plaintiff's Complaint contains fourteen causes of action.  See generally Am. Compl. Liberally construed, Plaintiff alleges the following claims: (1) Creed unlawfully suspended Plaintiff's driver's license, and attempted to enforce a court judgement imposing the suspension, in violation of Plaintiff's due process and equal protection rights under the Fourteenth Amendment to the U.S. Constitution; (2) Creed misrepresented to the DMV that Plaintiff failed to answer the summons, knowing it to be false, in violation of Plaintiff's due process and equal protection rights; (3) Sleurs arrested Plaintiff without probable cause and seized his driver's license and automobile in violation of Plaintiff's Fourth Amendment rights; (4) general liability against the Town of Bethlehem pursuant to § 1983; (5) Fiala improperly suspended Plaintiff's driver's license for failure to answer the summons in violation of Plaintiff's due process rights; (6) Fiala lacked authority to require Plaintiff to pay the Assessment in violation of Plaintiff's due process and equal protection rights; (7) Judge Donovan misrepresented the case record pertaining to Plaintiff's trial for his

4

speeding violation, improperly denied Plaintiff's motions, and therefore engaged in judicial misconduct, in violation of Plaintiff's due process and equal protection rights; and (8) Judge Breslin improperly denied Plaintiff's motions, and therefore violated New York's rules governing judicial conduct, in violation of Plaintiff's due process rights. See generally id.

In their respective Motions, Defendants move to dismiss all claims against them for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure (12)(b)(6). Town Mot.; State Mot.

### III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct

5

based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

## IV. DISCUSSION

### A. Claims Against Creed

Plaintiff alleges that Creed unlawfully suspended his driver's license and attempted to enforce a judgement reflecting the same in violation of his rights to due process and equal protection. Am. Compl. ¶¶ 25-27. Creed argues, *inter alia*, that Plaintiff's claims against her are essentially challenges to the validity of the underlying suspension itself, and accordingly are barred under the Rooker-Feldman doctrine. Town Mem. at 10.

*1. Rooker-Feldman Doctrine*

The Rooker-Feldman doctrine establishes "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). Creed argues that Plaintiff's claim that his constitutional rights to due process and equal protection were violated by the judgment leading to suspension of his license are merely an attempt to appeal the underlying conviction. Town Mem. at 10. The Court agrees. Plaintiff claims that the suspension of his license was unlawful, and thus his constitutional rights were violated by enforcement of the state court judgment. Am. Compl. ¶¶ 25-27. However, "Rooker-Feldman bars a losing party in state court from seeking what in substance would be appellate review of the state judgment in a Unites States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 287 (2005). Plaintiff's claims against Creed fall squarely within this scenario, and thus are not properly before

the Court.  See Bridgewater Operating Corp. v. Feldstein, 346 F.3d 27, 29 (2d Cir. 2003) ("[F]ederal district courts do not have jurisdiction over claims that have already been decided . . . by a state court."); see also Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (in which the Second Circuit noted that the "Supreme Court in Exxon Mobil held that the [Rooker-Feldman] doctrine 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" (citing Exxon Mobil, 544 U.S. at 284)).  Accordingly, Plaintiff's claims against Creed are barred under the Rooker-Feldman doctrine.

*2. Equal Protection and Due Process*

Mindful of Plaintiff's *pro se* status, even assuming *arguendo* that Plaintiff's claims are not direct appeals of the state court judgment, they still fail to state a claim for violation of Plaintiff's equal protection and due process rights under the Fourteenth Amendment.

The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike."  Brady v. Town of Colchester, 863 F.2d 205, 216 (2d Cir. 1988) (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)).  Generally, the Equal Protection Clause protects "suspect classes and fundamental interests against inequitable treatment, but other types of inequities and classifications may be justified by a showing of mere rationality." LeClair v. Saunders, 627 F.2d 606, 611 (2d Cir. 1980) (citing Dandridge v. Williams, 397 U.S. 471, 487 (1970)).  However, an equal protection claim may be brought "by a 'class of one' where a plaintiff alleges that she has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  African Trade & Info. Ctr., Inc. v.

7

Abromaitis, 294 F.3d 355, 362-63 (2d Cir. 2002) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).  A plaintiff may bring an equal protection claim based on a selective enforcement theory by demonstrating that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LeClair, 627 F.2d at 609-10.  The discrimination must be intentional or purposeful.  Id. at 609 (citations omitted).

Here, Plaintiff has not alleged any facts indicating that he is a member of a suspect class.  Thus, liberally construed, Plaintiff is asserting a "class of one" equal protection claim.  However, the Complaint is devoid of any facts that Plaintiff was treated differently than others similarly situated.  Plaintiff's allegation that his right to equal protection was violated is wholly conclusory and therefore subject to dismissal.  See Twombly, 550 U.S. at 570.

To the extent Plaintiff claims that he was denied due process by Creed, those claims also fail.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)) (internal quotation marks omitted).  "A driver's license is a state-created privilege that cannot be suspended without the procedural due process that the Fourteenth Amendment requires." Evans v. City of N.Y., 123 F. App'x 433, 434 (2d Cir. 2005) (citing Gudema v. Nassau Cnty., 163 F.3d 717, 724 (2d Cir. 1998)).

Here, Plaintiff does not allege a procedural violation; indeed, he concedes that he received a trial on the underlying speeding charge, was able to file several motions before and after the trial,

8

and received a notice of suspension. See Am. Compl. ¶¶ 9-16, 19; see also Dkt. No. 38 ("Plaintiff's Response to Town Mot.") at 20-21. Moreover, Plaintiff concedes that his license was validly suspended. See Am. Compl. ¶ 24. The gravamen of Plaintiff's Complaint against Creed is that she attempted to suspend his license for the wrong reason—failure to answer the summons—even though Plaintiff admits that his license was validly suspended for failure to pay a fine, and that the electronic records were later corrected to reflect the proper basis for the suspension. See id. ¶¶ 24-27. Plaintiff has provided no authority—and the Court is aware of none—that a valid suspension of a driver's license, which initially reflected an erroneous basis for the suspension but was later corrected, gives rise to a plausible claim for a violation of an individual's due process rights. Accordingly, Plaintiff's claims against Creed for violation of his equal protection and due process rights are dismissed.

**B. Claims Against Sleurs**

*1. False Arrest*

"In the context of § 1983 false arrest claims, federal courts look to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004); see also id. (gathering cases). Under New York law, "a plaintiff claiming false arrest must show . . . that the defendant intentionally confined him without his consent and without justification." Covington v. City of N.Y., 171 F.3d 117, 122 (2d Cir. 1999) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks and citation omitted). Sleurs argues that Plaintiff's claim for false arrest should be dismissed because Sleurs had probable

9

cause to arrest Plaintiff for aggravated unlicensed operation of a motor vehicle. Town Mem. at 15-16.

Under New York Vehicle and Traffic Law § 511(1)(1):

[a] person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner.

Where it is undisputed that a police officer's computer indicates that an individual's license has been suspended, courts have consistently held that the officer has probable cause to arrest the driver for operating a motor vehicle without a license. See Evans v. City of N.Y., 308 F. Supp. 2d 316, 329-30 (S.D.N.Y. 2004), aff'd, 123 F. App'x 433 (2d Cir. 2005) ("The plaintiff was arrested because the DMV computer records reflected that the plaintiff's license had been suspended for failure to pay his fine. There is no evidence that the information on the computer was false or inapplicable. Therefore, there was probable cause for the plaintiff's arrest, and his false arrest claim is dismissed."); see also McGuire, 2004 WL 250505, at *3 (collecting cases); Johnson v. Harron, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Here, Plaintiff concedes that Sleurs showed him his computer screen, which indicated that Plaintiff's license had been suspended. Am. Compl. ¶ 24. Moreover, Plaintiff admits that the computer indicated the "correct reason" for the suspension. Id. Accordingly, Sleurs had probable cause to arrest Plaintiff for aggravated unlicensed operation of a motor vehicle, and Plaintiff's claim

10

against Sleurs for false arrest is dismissed. See Evans, 123 F. App'x at 434-35.

### 2. Confiscation of Driver's License

Sleurs argues that he acted upon clear legal authority when he confiscated Plaintiff's driver's license. Town Mem. at 16. Specifically, Sleurs argues that he complied with New York Vehicle and Traffic Law § 340(b), which provides that "[t]he commissioner is hereby authorized to take possession of any license . . . upon the suspension thereof under the provisions of this article or to direct any peace officer, acting pursuant to his special duties or police officer to take possession thereof and to return the same to the office of the commissioner." See Town. Mem. at 16; see also id. (asserting additional compliance under N.Y. VEH. & TRAF. LAW § 510(7)). As it is undisputed that Plaintiff's license had been validly suspended at the time it was confiscated, the Court agrees that Sleurs acted with clear legal authority in seizing Plaintiff's license at that time. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted against Sleurs for the confiscation of Plaintiff's driver's license.

### 3. Impounding Plaintiff's Vehicle

Plaintiff's final allegation against Sleurs is that Sleurs unlawfully seized Plaintiff's vehicle when he impounded it following Plaintiff's arrest. Am. Compl. ¶ 29. Sleurs argues that he was authorized to impound Plaintiff's vehicle under § 511-c because he had probable cause to arrest Plaintiff for violating § 511(1)(a).[3] Town Mem. at 16. However, § 511-c(2) provides that a police officer may seize a motor vehicle being driven in violation of § 511(3)(a); it does not provide for

---

[3] Both Sleurs and Plaintiff refer to § 510-c with respect to legal authority to impound Plaintiff's vehicle. See Town Mem. at 16; Pl. Resp. Town Mot. at 23. However, § 510-c pertains to the suspension and revocation of learner's permits and other unrelated matters. Section § 511-c, on the other hand, covers the seizure and forfeiture of vehicles used in the unlicensed operation of a motor vehicle; thus, the Court assumes the parties intended to refer to § 511-c.

impounding a vehicle pursuant to a violation of § 511(1)(a), as Sleurs suggests. Moreover, § 511(3)(a) provides for impoundment of a vehicle in connection to aggravated unlicensed operation of a motor vehicle in the third degree under only two scenarios: (1) if such person has in effect ten or more suspensions, or (2) if the person's license is under permanent revocation. Neither scenario is present here. Accordingly, after careful review, the Court finds that the statutory authority relied upon by Sleurs did not provide a legal basis to impound Plaintiff's vehicle.

The Court also rejects Sleurs' argument that he is entitled to qualified immunity. See Town Mem. at 16-17. A qualified immunity defense is established if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). As discussed *supra*, the relevant statute is unambiguous that Sleurs lacked authority to impound Plaintiff's vehicle. Accordingly, Sleurs violated clearly established law, and no rational factfinder could conclude that it was objectively reasonable for Sleurs to believe that his actions did not violate such law. Therefore, Sleurs' Motion to dismiss Plaintiff's claim of unlawful seizure of Plaintiff's vehicle under the Fourth Amendment is denied.

### C. Claims Against Town of Bethlehem

Plaintiff asserts a general § 1983 allegation against the Town of Bethlehem. Am. Compl. ¶ 30. However, in a suit brought pursuant to § 1983, a municipality may not be held liable under a theory of *respondeat superior*. See Monell v. N.Y. City Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978). Instead, municipalities are only liable for constitutional deprivations that result from municipal policies or customs that non-policy making municipal employees follow. See id. at 690-99.

Here, Plaintiff has not alleged the deprivation of any constitutional rights stemming from a municipal policy or custom by the Town of Bethlehem. See generally Am. Compl. Accordingly, Plaintiff's claim against the Town of Bethlehem is dismissed for failure to state a claim upon which relief can be granted.

**D. Claims Against Fiala**

*1. Driver's License Suspension*

Plaintiff's first claim against Fiala alleges that he was denied due process when she suspended his license for failure to answer the summons, which was an erroneous basis for the suspension. Am. Compl. ¶¶ 31-32. Fiala argues that Plaintiff was not denied due process because he received notices prior to the suspension, was afforded a trial, and does not contest that the suspension itself was valid. See State Mem. at 11-12. Moreover, Fiala argues that Plaintiff's claims against her are barred by the Rooker-Feldman doctrine. Id. at 14-15. The Court agrees. For the reasons stated *supra* finding Plaintiff's challenges to the decisions underlying his conviction and corresponding license suspension barred by Rooker-Feldman, as well as their failure to state a claim for denial of due process, Plaintiff's claims against Fiala regarding suspension of his driver's license are dismissed.

*2. Driver Responsibility Assessment*

Plaintiff next alleges that his constitutional rights were violated because Fiala lacked authority to impose the Assessment fee against Plaintiff, and to threaten indefinite suspension of his license if Plaintiff failed to pay. Am. Compl. ¶¶ 35-36. Fiala argues that she properly exercised her legal authority under § 503(4), which provides that "[a]ny person who accumulates six or more points on his or her driving record for acts committed within an eighteen month period shall become

13

liable to the department for payment of a driver responsibility assessment." See State Mem. at 13.
Documents referenced directly in Plaintiff's Amended Complaint indicate that he committed
violations on September 20, 2007, and September 5, 2008, for a total of six points. See Dkt. No.
21-2, Ex. B at 16;[4] see also Am. Compl. ¶ 33. Thus, Plaintiff committed acts within eighteen
months that totaled six or more points. See N.Y. VEH. & TRAF. LAW § 503(4). Accordingly, Fiala
acted with clear legal authority in imposing the Assessment on Plaintiff, and Plaintiff has therefore
failed to state a claim against Fiala upon which relief can be granted.

**E. Claims Against Judge Donovan**

Plaintiff alleges that Judge Donovan violated Plaintiff's constitutional rights to due process
and equal protection when Judge Donovan misrepresented the case record and denied Plaintiff's
motions concerning Plaintiff's trial and conviction for the speeding violation in 2009. Am. Compl.
¶¶ 37-41. Judge Donovan argues that Plaintiff's claims against him are barred by the three-year
statute of limitation for actions brought pursuant to § 1983. Town Mem. at 6-7.

Under § 1983, "[t]he claim accrues when the plaintiff knows or has reason to know of the
harm." Connoly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001). Plaintiff's allegations against Judge
Donovan include: Judge Donovan compelling Plaintiff to appear in court several times during a six-
month period in 2009; a motion to dismiss filed by Plaintiff during this same six-month period;
Plaintiff's trial on October 26, 2009; a second motion filed by Plaintiff that was ruled on by Judge
Donovan "orally before the trial, and then belatedly in writing on March 11, 2010"; and Judge

---

[4] The pagination corresponds to the page numbers assigned by ECF.

14

Donovan's denial of Plaintiff's motion to vacate.[5] Am. Compl. ¶¶ 9-14. Plaintiff filed his original Complaint in this action on February 18, 2014, see Dkt. No. 1, and thus all allegations before February 18, 2011 are barred under the three-year statute of limitations, see Connoly, 254 F.3d at 41. All claims against Judge Donovan listed *supra* precede the cutoff date and, accordingly, are barred by the applicable statute of limitations.

Alternatively, even if Plaintiff's claims were deemed timely, Plaintiff's allegations against Judge Donovan amount to a challenge of Judge Donovan's decisions related to Plaintiff's trial. As noted *supra* in dismissing similar claims against Creed, these claims should be raised on appeal in state court and are not properly before the Court under the Rooker-Feldman doctrine. Accordingly, Plaintiff's claims against Judge Donovan are dismissed.

**F. Claims Against Judge Breslin**

Plaintiff alleges that his due process rights were violated when Judge Breslin improperly denied Plaintiff's motion to stay the judgment from his speeding conviction pending resolution of the appeal. Am. Compl. ¶¶ 42-50. Specifically, Plaintiff asserts that Judge Breslin applied an incorrect legal standard in denying Plaintiff's motion. Id. As with Plaintiff's allegations against Judge Donovan, his claims against Judge Breslin are likewise challenges to the merits of a state court judgement, which should be raised on appeal and are not properly before the Court. See State Mem. at 14-15. Thus, for the reasons stated *supra* finding Plaintiff's claims against Judge Donovan barred under the Rooker-Feldman doctrine, Plaintiff's claims against Judge Breslin must be dismissed for failure to state a claim upon which relief can be granted.

---

[5] Plaintiff does not provide a date on which this motion was denied, but it appears from the Complaint that it was addressed before Plaintiff's appeal was dismissed on December 11, 2009. See Am. Compl. ¶¶ 15-17.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants Karen Creed, Ryan Donovan, Crag M. Sleurs, and Town of Bethlehem's Motion (Dkt. No. 25) to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that all claims against Defendants Karen Creed, Ryan Donovan, and Town of Bethlehem are **DISMISSED**; and it is further

**ORDERED**, that all claims against Defendant Craig M. Sleurs are **DISMISSED**, except for Plaintiff's Fourth Amendment claim regarding seizure of his vehicle; and it is further

**ORDERED**, that Defendants Thomas Breslin and Barbara J. Fiala's Motion (Dkt. No. 36) to dismiss is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED:   March 02, 2015
         Albany, New York

Lawrence E. Kahn
U.S. District Judge