UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JARED KING,

                              Plaintiff,

        -against-                                    1:14-CV-165 (LEK/TWD)

KAREN CREED, *et al.*,

                              Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

        Pro se plaintiff Jared King commenced this action in February 2014, alleging violations

of his civil rights stemming from the suspension of his driver's licence. Dkt. Nos. 1

("Complaint"), 6 ("Amended Complaint"). The Court previously dismissed all but one of

Plaintiff's claims for failure to state a claim. Dkt. No. 49 ("March 2015 Order"). Presently before

the Court is defendant Craig Sleurs's motion for summary judgment on the sole remaining claim.

Dkt. Nos. 108 ("Motion"), 108-3 ("Memorandum"), 108-4 ("Statement of Material Facts").

Plaintiff also filed a cross motion for sanctions. Dkt. Nos. 110 ("Cross Motion"), 110-1

("Sanctions Memorandum"). For the reasons that follow, the Motion is granted, and the Cross

Motion is denied.

## II.    BACKGROUND

### A.  Factual Background

        This case has gone on for nearly four years, but the facts underlying the Amended

Complaint are quite simple. In September 2008, Plaintiff received a speeding ticket from the

Bethlehem Police Department. Am. Compl. ¶ 4. He contested the ticket, but was ultimately

convicted in a one-day trial on October 26, 2009 before Town Justice Ryan Donovan. Id. ¶¶ 9,
13–14. Plaintiff did not pay the ticket, and his driver's license was eventually suspended in 2012.
Id. ¶¶ 19, 24. Despite the suspension, Plaintiff continued to drive. Id. ¶ 22. In September 2013, he
received two tickets for operating a motor vehicle without a license from Sleurs, a Bethlehem
Police Officer. Id.

On November 26, 2013, Sleurs again observed Plaintiff driving in Bethlehem and
arrested him for aggravated unlicensed operation of a motor vehicle in the third degree, in
violation of N.Y. Veh. and Traf. Law § 511. SMF ¶¶ 5–6, 9; Dkt. No. 109-2
("Counterstatement") ¶¶ 5–6, 9. Plaintiff concedes that his license was suspended at the time of
his arrest, Counterstatement ¶ 1, and the Court previously held that Sleurs had probable cause to
arrest Plaintiff, Mar. 2015 Order at 10–11. Immediately before he was arrested, Plaintiff pulled
into the parking lot of Delmar Printers, a Bethlehem business. SMF ¶ 6; Counterstatement ¶ 6.
Plaintiff was alone in the vehicle at the time of his arrest, and there was no one immediately
available to remove his vehicle from the parking lot. SMF ¶ 8; Counterstatement ¶ 8. Rather than
leave Plaintiff's automobile unattended on private property for an unknown amount of time,
Sleurs decided to impound the car. SMF ¶ 10. Sleurs's decision to impound Plaintiff's vehicle
was made pursuant to Bethlehem Police Department General Orders GO-02-039 ("Suspended
and Revoked Drivers' Licenses") and GO-95-166 ("Impounded Vehicles") and in consultation
with his shift supervisor. Dkt. No. 108-2 ("Sleurs Affidavit") ¶¶ 6–7, Exs. B–C.

Plaintiff was arraigned and released on his own recognizance the same day he was
arrested. SMF ¶ 11; Counterstatement ¶ 11. Plaintiff alleges he was in custody for thirty-nine

2

minutes, Am. Compl.¶ 24, but has presented no evidence regarding the duration of his detention. His car was released from impound on November 27, 2013. SMF ¶ 12; Counterstatement ¶ 12.

### B. Procedural History

Plaintiff filed his Amended Complaint pursuant to 42 U.S.C. § 1983, alleging unreasonable seizure and violations of his due process and equal protection rights in connection with a the speeding violation and suspension of his driver's license. Am. Compl. ¶¶ 24–51. The Court previously dismissed all of Plaintiff's claims except the cause of action against Sleurs for unlawful seizure of Plaintiff's vehicle. Mar. 2015 Order at 12, 16.

Plaintiff moved for reconsideration of the March 2015 Order, Dkt. No. 56, which the Court denied, Dkt. No. 71 ("January 2016 Order"). Several months later, Plaintiff sought leave to file a second amended complaint. Dkt. No. 80. The Honorable Thérèse W. Dancks, U.S. Magistrate Judge, denied the motion to amend, Dkt. No. 94, and the Court affirmed Judge Dancks's denial, Dkt. No. 116 ("September 2017 Order").

On June 30, 2017, Sleurs moved for summary judgment on the one remaining claim. Mot. Plaintiff opposes the Motion, Dkt. No. 109-1 ("Opposition"), and cross moved for sanctions, Cross Mot.

## III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to identifying genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

IV.    **DISCUSSION**

**A. Sleurs's Motion**

*1. Fourth Amendment Claim*

Plaintiff alleges that Sleurs violated his Fourth Amendment rights when he impounded Plaintiff's vehicle on November 26, 2013. Am. Compl. ¶ 29. The Fourth Amendment secures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" United States v. Derverger, No. 07-CR-147, 2008 WL 819040, at *4 (N.D.N.Y. Mar. 24, 2008) (quoting United States v. Knights, 534 U.S. 112, 118–19 (2001)), aff'd, 337 F. App'x 34 (2d Cir. 2009).

Sleurs contends—and Plaintiff does not dispute—that resolution of the remaining claim turns on "whether Officer Sleurs was legally authorized to impound Plaintiff's vehicle in conjunction with his arrest for Aggravated Unlicensed Operation of a Motor Vehicle in the 3rd Degree." Dkt. No. 111-1 ("Reply") at 3. The Court agrees. If, as Sleurs argues, there are no disputes of material facts with respect to this question, then Sleurs is entitled to summary judgment, and the Amended Complaint must be dismissed. If, on the other hand, Plaintiff can identify a genuine material factual dispute as to Sleurs's legal authority to impound his vehicle, then summary judgment must be denied.

The Supreme Court has long recognized that police may impound vehicles "[i]n the interests of public safety and as part of what the Court has called 'community caretaking

functions.'" South Dakota v. Opperman, 428 U.S. 364, 368 (1976) (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). "Police officers may exercise their discretion in deciding whether to impound a vehicle, so long as that discretion is 'exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" United States v. Best, 415 F. Supp. 2d 50, 53 (D. Conn. 2006) (quoting Colorado v. Bertine, 479 U.S. 367, 375 (1987)); see also United States v. Messina, No. 08-CR-529, 2009 WL 455306, at *3 (S.D.N.Y. Feb. 24, 2009) ("The officers' decision to impound the rental car was a legitimate exercise of the officers' community caretaking function. 'Safeguarding individuals and their property from harm is the essence of the "community caretaking function" of the police.'" (quoting Best, 415 F. Supp. 2d at 56)). So long as an officer's discretion is not unfettered, it does not offend the Fourth Amendment. See Messina, 2009 WL 455306, at *4  (rejecting a criminal defendant's argument that his car was unlawfully seized without a warrant because "the officers' decision to impound the vehicle was constrained by standard department practice, which is sufficient to comport with the Fourth Amendment").

Here, Sleurs decided to impound Plaintiff's vehicle pursuant to Police Department policies governing suspended drivers' licenses and impounded vehicles. Sleurs Aff. ¶¶ 6–9 & Exs. B–C. Specifically, Sleurs did not want to leave Plaintiff's vehicle unattended on private property for an unknown period of time. SMF ¶ 10. This is a permissible and reasonable exercise of the "community caretaker function" allowed under the Fourth Amendment. See, e.g., United States v. Mundy, 806 F. Supp. 373, 376 (E.D.N.Y. 1992) ("Courts give 'deference to police caretaking procedures designed to secure and protect vehicles and their contents while in police custody.' This rule is particularly important where a car would be unattended, even if legally

parked, and the police have reason to believe that a suspect will be separated from his vehicle for a long period of time." (quoting Bertine, 479 U.S. at 372)).

This case is distinguishable from United States v. Duguay, 93 F.3d 346 (7th Cir. 1996), where the Seventh Circuit held that a warrantless impoundment and inventory search of a vehicle violated the Fourth Amendment. Id. at 351–52. In Duguay, the court explicitly found that police had not acted pursuant to a standard procedure in deciding to impound the vehicle in question. Id. at 351 ("[W]e are not satisfied that the Alton Police Department employs a standardized impoundment procedure."). Courts in this and other circuits have distinguished Duguay on this basis. E.g., Best, 415 F. Supp. 2d at 55 (distinguishing Duguay on the ground that the "police had not acted pursuant to a standard procedure in deciding to impound the vehicle in question"); United States v. Smith, No. 05-CR-0257, 2005 WL 2746657, at *2 (E.D. Pa. Oct. 24, 2005) (same). Moreover, the arrested individual in Duguay was merely a passenger in the impounded vehicle and both the driver and a second passenger were present at the arrest and able to remove the automobile for safekeeping. 93 F.3d at 353. Neither fact is present here: Sleurs impounded Plaintiff's vehicle pursuant to police department guidelines and no one was present to remove Plaintiff's car from the private parking lot in which he was arrested. In light of these uncontested facts, no reasonable jury could conclude that Sleurs's decision to impound Plaintiff's vehicle was an impermissible exercise of the community caretaker function or otherwise violated the Fourth Amendment. Therefore, Sleurs is entitled to summary judgment on the remaining Fourth Amendment claim.

Plaintiff argues that Sleurs's decision to impound his vehicle was inconsistent with the general orders relied upon. Opp'n at 5. He points to sections II.F and II.G of GO-02-039. Id.

(citing Sleurs Aff., Ex. B at 2). While he does not actually explain the significance of these provisions, Plaintiff appears to argue that, because GO-02-039 did not require impounding his car, Sleurs's decision to do so was inconsistent with the policy. Section II.F provides that "[a] vehicle being operated by a person with no license or a suspended or revoked license generally will not be impounded." Sleurs Aff., Ex. B at 2. Section II.G provides that "[v]ehicle impoundment is not necessary, *at the discretion of the shift supervisor*, when custodial arrest is for the sole purpose of securing bail." Id. (emphasis added). Plaintiff's reading of the policy does not raise a triable issue of material fact regarding Sleurs's authority to impound his vehicle. While the provisions cited do not *require* impounding a vehicle when a driver is arrested for driving without a license, they leave the decision to do so within the discretion of the shift supervisor. Because Sleurs decided to impound Plaintiff's automobile in consultation with his shift supervisor, Sleurs Aff. ¶ 7, he acted consistent with Department policy and did not violate the Fourth Amendment.

Plaintiff purports to identify several factual disputes that he claims preclude summary judgment. Counterstatement ¶¶ 13–18; Opp'n at 2, 5. Because none implicate the central question before the Court—whether Sleurs had legal authority to impound Plaintiff's automobile—the Court need not depart from its conclusion that summary judgment is proper here.

First, Plaintiff claims that "[t]here is a dispute in the record between Officer Sleurs' [sic] sworn statement and Sergeant Rexford [sic] representation to me as to whether the towing and impounding of an automobile subject to an AUO arrest is discretionary or not." Counterstatement

8

¶ 13 (citing Dkt. No. 56 ¶¶ 14–16).[1] Even assuming there is a genuine dispute as to whether impoundment pursuant to an arrest for aggravated unauthorized operation of a vehicle is discretionary, it is not a material issue. As explained above, "officers may exercise their discretion in deciding whether to impound a vehicle, so long as that discretion is 'exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" Best, 415 F. Supp. 2d at 53 (quoting Bertine, 479 U.S. at 375). Thus, even if Plaintiff is correct and there is a dispute as to whether Sleurs had discretion to impound his vehicle, such discretion was permissible under the Fourth Amendment because it was exercised pursuant to established Police Department guidelines.

Next, Plaintiff asserts that there is a dispute "regarding what the NYSPIN system reported on November 26, 2013." Counterstatement ¶ 14. Plaintiff explains that, while Sleurs stated that the system displayed a single suspension for "failure to pay fine," Plaintiff believes there were two suspensions displayed, one for "failure to pay fine" and a second erroneous suspension notice for "failure to appear." Id. The discrepancy, Plaintiff argues, "is highly material, because it goes to whether Officer Sleurs had probable cause" to arrest him. Id. The Court considered and rejected this argument when it dismissed Plaintiff's false arrest claim. Mar. 2015 Order at 10–11. Re-raising the issue now does not alter the Court's analysis of his unlawful seizure claim.

Plaintiff also argues that there is a question of fact "as to whether someone would be available to remove the automobile from private property, whether I could obtain permission to keep the car on private property until it could be removed, *etc.*" Counterstatement ¶ 15. The

_____

[1] Though Plaintiff cites Dkt. No. 56 to support this assertion, he appears to actually rely on Dkt. No. 56-1, Plaintiff's affidavit in support of his motion to reconsider the March 2015 Order.

Fourth Amendment does not require police officers "to explore alternatives to impoundment" before seizing a suspect's vehicle where there is no one immediately present to remove the vehicle. People v. Wilburn, 856 N.Y.S.2d 767, 768 (App. Div. 2008); cf. Duguay, 93 F.3d at 353 (finding impoundment to be unlawful where two individuals were present and willing to move vehicle). Even though there may be a dispute as to whether Plaintiff could have eventually identified someone to move his vehicle or obtained permission to leave it in the parking lot, Sleurs was not required to exhaust these possibilities before impounding the vehicle. Therefore, the purported factual dispute does not impact Sleurs's entitlement to summary judgment.

Plaintiff's contention that the Town of Bethlehem "might be directly liable if a jury believes Officer Sleurs acted 'objectively reasonably' in applying [the suspended drivers' license and impoundment] policies," Counterstatement ¶ 17, is not relevant to the Court's conclusions regarding the unlawful seizure claim against Sleurs. The Court dismissed the Town as a defendant in this action in the March 2015 Order. Mar. 2015 Order at 16. To the extent that "newly discovered facts," Counterstatement ¶ 17, potentially impact the viability of Plaintiff's dismissed claims against the Town, they have no bearing on Sleurs's liability for impounding his vehicle.

Finally, Plaintiff argues there is a "material factual dispute as to whether [the] proffered Bethlehem Police Department policies regarding license suspension and impoundments are indeed the town's policies." Id. ¶ 18. Because the policies attached to the Sleurs Affidavit "are neither certified nor proffered by an employee with the knowledge and authority to proffer them," Plaintiff argues they are inadmissible hearsay. Id. As an initial matter, Plaintiff cites no cases to support his claim that a police officer is not competent to proffer police department policies and

practices which the officer applies in the regular execution of his duties. In any event, while the documents Sleurs initially offered were uncertified, he has remedied any defect by submitting certified copies with his Reply. Dkt. No. 111 ("Reply Declaration"), Ex. A. Certified copies of public records are self-authenticating and admissible without extrinsic evidence of authenticity. Fed. R. Evid. 902(4); see also, e.g., Ball v. A.O. Smith Corp., 451 F.3d 66, 71 (2d Cir. 2006) (noting that certified public records are self-authenticating and admissible under Rule 902(4)). The general orders submitted with the Reply Declaration are certified as "true and certified cop[ies]" by a Bethlehem Police Department Records Section employee. Reply Decl., Ex. A. Plaintiff has not presented any reason to doubt the authenticity beyond his speculation "that neither the court nor [he] know whether they are valid or comprehensive." Counterstatement ¶ 18. Because they comport with Rule 902(4), the general orders are self-authenticating and, contrary to Plaintiff's contention, not hearsay.

### 2. State Law Claims

In addition to his Fourth Amendment claim, Plaintiff alleges that Sleurs violated his rights under the New York State Constitution, as well as New York Civil Rights Law § 8. Am. Compl. ¶ 29. Like the Fourth Amendment, § 12 of the New York Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." N.Y. Const. § 12. Section 8 of the Civil Rights Law provides analogous protections and is analyzed under the same framework. See Gustafson v. Vill. of Fairport, 106 F. Supp. 3d 340, 351 (W.D.N.Y. 2015) ("The Court has been unable to locate any New York cases recognizing a cause of action under Civil Rights Law § 8 separate from the New York State

Constitution, and the New York Court of Appeals has repeatedly applied identical analyses to § 12 of the New York State Constitution and Civil Rights Law § 8." (collecting cases)).

Section 12 offers no additional protections against impoundment than its federal analogue. Applying § 12, New York "courts have held that a vehicle's impoundment serves a valid community caretaking function, and is therefore constitutionally reasonable, where the defendant does not have a valid driver's license and no one else who can drive the car is present." People v. Iverson, 22 Misc. 3d 470, 475 (Rochester City Ct. 2008) (collecting cases); see also Wilburn, 856 N.Y.S.2d at 768 ("[U]pon determining that he was an unlicensed driver and that the passenger in the vehicle also was unable to drive it, the police properly impounded the vehicle."); People v. Buckmon, 742 N.Y.S.2d 69, 70 (App. Div. 2002) ("Upon learning that the defendant's learner's permit had been revoked, the trooper had probable cause to arrest the defendant . . . [and because there was no one immediately present to remove the automobile,] the trooper was authorized to impound the vehicle and perform an inventory search in accordance with standard police procedures."), lv. denied N.E.2d 190 (N.Y. 2002). Like the Fourth Amendment, § 12 does not require police officers "to explore alternatives to impoundment," Wilburn, 856 N.Y.S.2d at 768, and so Sleurs was not obligated to wait while Plaintiff attempted to locate someone to remove his vehicle. Because Sleurs is entitled to summary judgment on Plaintiff's Fourth Amendment claim, the Court also grants summary judgment on the remaining state law claims.

The Court has considered Plaintiff's additional arguments, and concludes that none justify denying Sleurs's Motion. Because the Court finds that Sleurs's decision to impound

Plaintiff's vehicle was lawful, it need not address his additional argument, Mem. at 3–4, that he is entitled to qualified immunity.

### B. Plaintiff's Cross Motion

Plaintiff has cross moved for sanctions, arguing that Sleurs's attorney, Crystal R. Peck, submitted her attorney declaration in bad faith in violation of Rule 56(h) of the Federal Rules of Civil Procedure. Sanctions Mem. at 2. He cites no cases to support his Cross Motion, explaining that he didn't "have time to finish th[e] motion by the due date of 7/19/17 and research any existing U.S. Supreme Court precedents regarding when a lawyer should be punished under Rule 56(h) for bad faith." Id. Plaintiff "leave[s] that responsibility to [the Court's] law clerks." Id. Contrary to Plaintiff's apparent belief, the Court is not obligated to conduct legal research on his behalf. That is especially true here, where the request for sanctions is so clearly meritless.

Rule 56(h) authorizes a district court to impose "appropriate sanctions," including attorney's fees, against a party or counsel who submit "an affidavit or declaration under [Rule 56] in bad faith or solely for delay." Fed. R. Civ. P. 56(h). "Bad faith may be found when an attorney's actions are 'so completely without merit . . . that they must have been undertaken for some improper purpose.'" Jimenez v. City of New York, 666 F. App'x 39, 41 (2d Cir. 2016) (alteration in original) (quoting Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 338 (2d Cir. 1999)).

Plaintiff points to three statements in Peck's declaration that he claims are untruthful and thus submitted in bad faith. Cross Mot. at 2–3. First, he claims Peck "misrepresent[ed] . . . that [P]laintiff's remaining claim is a 'Fourth Amendment unlawful seizure claim pertaining to Officer Sleurs [sic] decision to impound Plaintiff's vehicle in conjunction with his arrest of

Plaintiff for driving with a suspended license.'" Id. at 2 (quoting Dkt. No. 108-1 ("Peck Declaration") ¶ 7). Plaintiff's basis for objecting to this statement is not entirely clear. He explains: "This claim pertains to my Fourth Amendment unlawful seizure claim pertaining to Officer Sleurs' *lack of probable cause* (my emphasis) to arrest me for *knowingly* driving with a suspended license." Id. To the extent that Plaintiff believes that his false arrest claim remains at issue in this case, he is mistaken. As Peck correctly notes, Peck Decl. ¶ 7, the Court dismissed the false arrest claim in the March 2015 Order, Mar. 2015 Order at 10–11, 16. Because the contested statement is true, it could not have been submitted in bad faith and is not grounds for sanctions.

Plaintiff next claims that Peck falsely stated that "Plaintiff has had an opportunity to conduct discovery." Cross Mem. at 3. He concedes that Sleurs produced discovery, but complains that Sleurs's attorneys objected to some of Plaintiff's discovery requests. Id. A party responding to a discovery request "may object to some or all of the discovery sought." 8B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & P. § 2213 (3d ed.); see also Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). The mere fact that Sleurs objected to some of Plaintiff's discovery requests—and that Plaintiff chose to not conduct depositions—does not mean Sleurs denied him an opportunity to conduct discovery. Peck's statement regarding discovery is unobjectionable.

Finally, Plaintiff argues that Peck's statement that "[t]he current scheduling order requires dispositive motions to be filed on or before June 30, 2017" is "so obviously false and was made to justify the filing of the motion at this time, instead of more properly after discovery was

14

completed." Cross Mot. at 3 (quoting Peck Decl. ¶ 14). Once again, Plaintiff is mistaken. Judge Dancks's February 17, 2017 Decision and Order indeed set a discovery deadline of May 31, 2017 and dispositive motion deadline of June 30, 2017. Dkt. No. 94 ("February 2017 Order") at 34. Plaintiff points to nothing in the record indicating that this deadline was altered or not in effect when Sleurs filed the Motion. His apparent contention to the contrary is baseless.

Plaintiff has failed to identify any false statements in the Peck Declaration, never mind the kind of egregious misstatements required to show bad faith. Therefore, sanctions are plainly unjustified and the Cross Motion is denied.

### C. Remaining Motions

Plaintiff has two remaining motions pending before the Court, a motion for reconsideration of Judge Dancks's August 14, 2017 order denying Plaintiff's request for a judicial conference, Dkt. No. 115 ("Reconsideration Motion"), and a motion for a judicial conference, Dkt. No. 117 ("Conference Motion"). Because the Court is dismissing the Amended Complaint, both motions are moot and therefore denied.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Sleurs's Motion (Dkt. No. 108) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Cross Motion (Dkt. No. 110) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Reconsideration Motion (Dkt. No. 115) and Conference Motion (Dkt. No. 117) are **DENIED as moot**; and it is further

**ORDERED**, that the Amended Complaint (Dkt. No. 6) is **DISMISSED**, and the Clerk of the Court is instructed to close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        December 13, 2017
              Albany, New York


Lawrence E. Kahn
U.S. District Judge